## In re BOARDWALK MARKETPLACE SECURITIES LITIGATION.

### No. 88–7035.

United States Court of Appeals,
Second Circuit.

June 14, 1988.

Before FEINBERG, Chief Judge, and NEWMAN and PRATT, Circuit Judges.

### ORDER

On consideration of the briefs and record and the oral argument in this appeal, it is hereby ORDERED, upon this court's own motion ordered by the undersigned (constituting the panel hearing this appeal), that the Clerk of the Court transmit to the Clerk of the Connecticut Supreme Court the attached Certificate, under the official seal of this court, together with a complete set of the briefs, appendix and record filed by the parties with this court. The parties are hereby ordered to bear the cost equally of such fees and costs, if any, as may be requested by the Connecticut Supreme Court.

/s/WILFRED FEINBERG
Wilfred Feinberg,
*Chief Judge.*
/s/JON O. NEWMAN
Jon O. Newman,
/s/GEORGE C. PRATT
George C. Pratt,
*Circuit Judges.*

Certificate

to

The Connecticut Supreme Court

(pursuant to Conn.Gen.Stat. § 51–199a-

Uniform Certification of Questions
of Law Act)

This case involves an appeal from an interlocutory ruling of the United States District Court for the District of Connecticut, Warren W. Eginton, J., reported at 668 F.Supp. 115 (D.Conn.1987), that certain promissory installment notes at issue in a complex, multidistrict litigation arising from the formation and demise of several tax shelter limited partnerships are not negotiable instruments under Connecticut law. The original lender on the notes was a Connecticut financial institution. Many of the notes have since found their way into the hands of the banks that are the appellants in this action. The tax shelter investors claim they have been defrauded and many of them have ceased making payments on the notes. Over 300 suits, most initiated by the banks against defaulting investors, have been consolidated in this litigation.

A threshold question in the litigation is whether the banks as purchasers of the investors' notes are holders in due course and thus immune from most of the defenses raised by the investors. Central to that issue is the narrow question of whether the notes are negotiable instruments. As the district court stated, "[t]he investors pose a narrow challenge to the notes' claimed negotiability, alleging that in contravention of [UCC] Section 3–104(1)(c) they are neither

payable on demand nor at a definite time." 668 F.Supp. at 118. The district court determined that the notes were not negotiable instruments, holding that the notes were not due at a definite time and were not demand notes within the meaning of UCC §§ 3–104(1), 3–108, 3–109. In December 1987, the district court certified the negotiability question for immediate appeal pursuant to 28 U.S.C. § 1292(b) on the ground that it was a controlling question of law and that a final resolution of the question would greatly advance the resolution of the entire litigation. The court stressed that there are more than 1,000 notes in the multidistrict litigation that are affected by the answer to this question. The court also stressed that it was a close question as to whether the notes were negotiable and that there is little case law on point. It stated that:

> there is substantial difference of opinion on whether the notes are negotiable, precisely because this is a case of first impression and so few reported decisions provide any analysis of the Code's negotiability requirements that can guide their application in new settings.

The dearth of case law on this question is reflected in the conclusion of the Code's leading commentators that the condition that a note be payable on demand or at a definite time "seem[s] to have caused little difficulty recently and we devote no space to them." J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 554 (2d ed. 1980). One can speculate that the Code's clear requirements for negotiability are easy to comply with and therefore do not produce a great amount of litigation. When notes are drafted which tread the line marking the outer limits of negotiability, however, the Code's language must be carefully parsed. At this point, differences of opinion become substantial.

In January 1988, this court granted leave to appeal.

We believe that the question whether the notes are negotiable instruments should be decided by the Connecticut Supreme Court.

The notes provide that they are to be governed by Connecticut law and that the parties agree to submit to federal or state jurisdiction, and none of the parties dispute that Connecticut law governs.

There is little room for dispute that the notes do not fit squarely within the UCC definition of notes payable at a definite time, UCC § 3–109, or demand notes, UCC § 3–108. Although each note apparently contains a stated handwritten date on which installment payments are to commence, the notes also indicate that this date is an estimated date and that the actual date for commencement of payment will be provided to the investor in written notice from the lender. And, while the banks argue that the provision permitting the lender (and arguably the holder banks) to set the date for the first installment payment makes the notes demand notes, it is not entirely clear that the UCC envisions demand installment notes—that is, notes for which the first installment payment is due on demand and the remaining installments are due at stated intervals thereafter, as opposed to notes in which the entire principal amount is due on demand. There appear to be good arguments on both sides of the negotiability question.

The negotiability question presented here is apparently one of first impression for which there appears to be no controlling precedent in Connecticut, affects a significant number of notes in this litigation, is likely to recur and will have a potentially significant impact on commercial practices. Its resolution by the Connecticut Supreme Court at this time would aid in the administration of justice.

The foregoing is hereby certified to the Connecticut Supreme Court pursuant to Conn.Gen.Stat. § 51–199a.

/s/WILFRED FEINBERG
Wilfred Feinberg,
*Chief Judge.*

/s/JON O. NEWMAN
Jon O. Newman,

/s/GEORGE C. PRATT
George C. Pratt,
*Circuit Judges.*